IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, the Court-Appointed Receiver of U.S. VENTURES LC, WINSOME INVESTMENT TRUST, and the assets of ROBERT J. ANDRES and ROBERT L. HOLLOWAY,<br><br>Plaintiff,<br><br>v.<br><br>PETER O. WIDMARK and LAURIE WIDMARK, husband and wife,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:11-cv-01097<br><br>Judge Clark Waddoups |

**INTRODUCTION**

This matter is before the court on Cross-Motions for Summary Judgment filed by Defendants Peter and Laurie Widmark, (Dkt. No. 39); and by Plaintiff R. Wayne Klein, the court-appointed receiver of U.S. Ventures LC, Winsome Investment Trust, and the assets of Robert J. Andres and Robert L. Holloway, ("Receiver"), (Dkt. No. 40). The court held a hearing on the motions on February 24, 2015 and took the matters under advisement. For the reasons set forth below, the court GRANTS IN PART and DENIES IN PART the Receiver's Motion for Summary Judgment, and DENIES the Widmarks' Motion for Summary Judgment.

**BACKGROUND**

On January 25, 2011, Judge Bruce Jenkins appointed a receiver in *U.S. Commodity Futures Trading Commission v. U.S. Ventures LC, et al.*, Case No. 2:11-cv-00099-BSJ. That suit

was filed by the Commodity Futures Trading Commission ("CFTC") on January 24, 2011 against U.S. Ventures LC, Winsome Investment Trust, Robert J. Andres, and Robert L. Holloway (collectively "Receivership Defendants") over their operation of a fraudulent commodity investment scheme. The Receiver was charged with taking control over the assets of the Receivership Defendants, investigating their affairs, and prosecuting claims to recover improper payments made by them.

The investigations by the CFTC and the Receiver reveal that the Receivership Defendants were functioning as a Ponzi scheme. Since 2005, Winsome engaged in the solicitation of individuals for participation in a commodities future pool, offering a large share of the profits from its investments or a 10 to 15% guaranteed rate of return per quarter. Out of approximately $43 million in investments raised before April 2007, Winsome placed $24.7 million with US Ventures. The latter was insolvent since late 2005 and never realized any net profits. Despite losing over $10.6 million in trading, US Ventures still made distributions of more than $26 million to its investors, including a total of $14.5 million to Winsome.[1]

US Ventures ceased trading in April 2007, when its funds were frozen as a result of a lawsuit filed by the Securities and Exchange Commission. From that point through December 2010, Winsome collected an additional $34.2 million from investors. The money not invested with US Ventures was principally used by Winsome to pay distributions to investors, for personal expenditures by Andres, and in a panoply of failed investment projects that resulted in no profits. By the time the CFTC filed suit against Winsome, it only had an aggregate account balance of $896.19. Judgment in that action has been entered against the Receivership Defendants, and both Andres and Holloway have also been convicted of wire fraud.

---

[1] The total amount received by Winsome includes returns of principal as a result of withdrawals it made from US Ventures.

The Widmarks met with Andres in February, 2006 and proceeded to invest approximately $100,000 with Winsome prior to 2007. They subsequently received distributions from the trust in the amounts of: $140,000 on February 13, 2007; $140,000 on March 15, 2007; and $11,000 on May 12, 2008. The Receiver filed this action on December 2, 2011 to set aside Winsome's distributions to the Widmarks under the Utah Uniform Fraudulent Transfer Act and unjust enrichment, together with a request for the establishment of a constructive trust over those funds. The Widmarks contend that the suit is barred under the statute of limitations, that the Receiver lacks standing under the doctrine of *in pari delicto*, and that he fails to meet the elements of unjust enrichment.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where parties file cross-motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). However, "summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Id.* "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). Finally, it should be noted that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

**I. Fraudulent Transfers**

    A. Actual and Constructive Fraud

Under the Utah Uniform Fraudulent Transfer Act, a transfer is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud." UTAH CODE ANN. § 25-6-5(1)(a). A transfer is also fraudulent if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and the debtor was either engaged in a transaction "for which his remaining assets were unreasonably small" in relation to the transaction, or the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due." UTAH CODE ANN. §§ 25-6-5(1)(b), 25-6-6(1). To the extent that a good faith transferee gave value to the debtor for the transfer, they are entitled to "a reduction in the amount of liability on the judgment." UTAH CODE ANN. § 25-6-9(4).

The uncontroverted evidence demonstrates that when the distributions in question were made, Winsome was already insolvent and paying returns to early investors with the money coming in from new investors. *See* Decl. R. Wayne Klein (Dkt. No. 40-1); Receiver's Expert Witness Report (Dkt. No. 40-3); Decl. Michelle S. Bougas (Dkt. No. 39-1); Aff. Bryan Bailey (Dkt. No. 39-6). That is the very definition of a Ponzi scheme: "A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." *State v. Bolson*, 2007 UT App 268, ¶ 4, 167 P.3d 539 (internal quotations omitted). Accordingly, "because Ponzi schemes are insolvent by definition, we presume that transfers from such entities involve actual intent to defraud." *Klein v. Cornelius*, 786 F.3d 1310, 1320 (10th Cir. 2015).

With regards to constructive fraud, "[t]he primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." *Id.* (citing

4

*SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007)). Because Winsome was insolvent by 2007, with more outstanding liabilities than assets, all transfers to the Widmarks only served to further decrease its net worth. That means that Winsome did not receive reasonably equivalent value, and that the transfers are also constructively fraudulent. However, because the amount the Widmarks invested with Winsome constitutes value for the transfers they received, liability would only extend for funds in excess of that amount.

      B. Statute of Limitations

Claims for actual fraud under UTAH CODE ANN. 25-6-5(1)(a) are extinguished unless filed within four years after the transfer was made, or if later, within one year after the transfer was or could reasonably been discovered by the claimant. UTAH CODE ANN. § 25-6-10. The same four year limitations period applies to claims for constructive fraud under UTAH CODE ANN. 25-6-5(1)(b) and 25-6-6(1), but without any extensions for subsequent discovery of the fraud. *Id.* Since the transfer for $11,000 was made on May 12, 2008, the Receiver's claim as to that transaction falls within the four year limitations period and is timely, leaving only the February 13 and March 15, 2007 transfers at issue.

The Receiver maintains that because Andres was the party perpetuating the fraudulent Ponzi scheme, and he was the sole individual in ownership and control of Winsome until the receivership was created on January 25, 2011, the transfers to the Widmarks could not reasonably have been discovered until after that date. Because this suit was filed on December 2, 2011, he contends that the one year limitations period for claims of actual fraud had not expired. The Receiver also contends that the statute of limitations is equitably tolled up to the time of his appointment under the doctrine of adverse domination. The Widmarks disagree and argue that the statute of limitations started running prior to the appointment of the Receiver. First, they argue

5

that because Andres' knowledge is imputed to Winsome, the latter is charged with knowledge of the transfers from the time they were made. Second, they contend that the CFTC had inquiry notice of the fraud sometime after 2007 and at the latest by November 19, 2010, when the agency obtained a declaration from Jerry Comenaux exhibiting multiple badges of fraud in relation to his investment in Winsome.

With regards to actual fraud, the provision extending the statute of limitations is specifically limited to the time when the transfers could have been reasonably discovered "by the claimant." The CFTC does not have the ability to institute an action on behalf of Winsome to set aside fraudulent transfers, and as such, cannot constitute the claimant. Moreover, the Receiver could not have known about the transfers until his appointment because that is when he obtained access to Winsome's records. *Cornelius*, 786 F.3d at 1322 ("[T]he very earliest that the statute could have begun to run was the point at which Andres lost control of Winsome and Klein gained it.").

In any case, given that Winsome was solely under the control of Andres, there was no possibility that Winsome would file suit to avoid the fraudulent transfers and thereby disclose Andres' wrongdoings. This is the very rationale that underlies the doctrine of adverse domination, which "recognizes that control of the company by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests." *Wing v. Buchanan*, 533 Fed. Appx. 807, 810–11 (10th Cir. 2013) (brackets and internal quotations omitted); *Wing v. Dokstader*, 482 Fed. Appx. 361, 364–65 (10th Cir. 2012).[2] As such, the limitations period for both actual and

---

[2] In both of the cited cases, the Tenth Circuit has concluded that Utah would adopt the adverse domination theory when computing the applicable limitations period. The Widmarks argue that is undermined by *Utah Park City Mines v. Greater Park City Company*, 870 P.2d 880 (Utah 1993). However, that case actually supports the Tenth Circuit's conclusion, specifically noting that "As long as the wrongdoers remains in control of the corporation and conceal

6

constructive fraud claims is tolled up to the time when Andres was removed. *Id.* Because this suit was filed well within four years from the appointment of the Receiver, the court finds that the claims are not barred under the applicable statutes of limitations.

C. In Pari Delicto

The Widmarks also contend that the Receiver lacks standing to assert the fraudulent transfer claims under the doctrine of *in pari delicto*,[3] which precludes a plaintiff from recovering from an illegal transaction if he bears at least equal responsibility with the defendant for it. *Mosier v. Callister, Nebeker & McCullough, P.C.*, 546 F.3d 1271, 1275 (10th Cir. 2008). The doctrine is equitable, and its purpose is to deter wrongful conduct. *Id.* The Widmarks argue that Andres' conduct should be imputed to Winsome, and that because the Receiver stands in the shoes of the trust, he is therefore precluded from asserting claims that are founded upon Winsome's own fraud. They further argue that the exception that "fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation," does not apply to companies such as Winsome where an agent is the sole representative of a principal. *Thabault v. Chait*, 541 F.3d 512, 527 (3d Cir. 2008). The Receiver cites *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1995), and contends that *in pari delicto* does not apply in receivership cases. The reasoning behind the Seventh Circuit's holding was that "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Id.* at 754.

---

their wrongdoing from shareholders or independent directors, the statute of limitations on the corporation's claims against them is tolled." *Id.* The question of whether any shareholders or independent directors had any knowledge of the wrongdoing has no bearing in this case because the Widmarks concede that "Winsome was solely owned and operated by Robert Andres . . . [with] no other trustees or shareholders." Mot. Summ. J. at 17 (Dkt. No. 39). The same conclusion follows with regards to any knowledge by the CFTC for the reasons discussed in the preceding paragraph.

[3] They cite *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) for the proposition that *in pari delicto* is a matter of standing. While the Tenth Circuit has not clarified whether it considers the doctrine a matter of standing or an affirmative defense, the results under either approach are the same. *Rajala v. Gardner*, 2012 U.S. Dist. LEXIS 49762, *46–48 (D. Kan. Apr. 9, 2012).

In *Sender v. Buchanan (In re Hedged-Investments Assocs.)*, the Tenth Circuit rejected *Scholes* with regards to a bankruptcy trustee. 84 F.3d 1281, 1285 (10th Cir. 1996). However, the court explicitly stated that *Sender* did not implicate the law of receivership, and noted that nothing stated in the opinion "should be construed as applicable to that area of law or as a comment on the validity of the rule announced in *Scholes*." *Id.* at 1285 n.5. Because bankruptcy is strictly governed by statute, it can prevent a court from considering post-petition events such as the appointment of a trustee in its *in pari delicto* analysis. This is clearly the case where claims are based on 11 U.S.C. § 541, which limits the bankruptcy estate to "all legal or equitable interests of the debtor in property **as of the commencement of the case**." (emphasis added). *Sender* specifically held that this language "places both temporal and qualitative limitations on the reach of the bankruptcy estate" and "establishes the estate's rights as no stronger than they were when actually held by the debtor." 84 F.3d at 1285. By contrast, in a non-bankruptcy suit to set aside fraudulent transfers, the court is free to consider post appointment developments in the weighing of the equities. *See Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 140 n.19 (D. Mass. 2008).

In the traditional application of *in pari delicto*, both parties before the court must be guilty of wrongdoing. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985). Denying recovery to a plaintiff in those situations acts as a deterrent to illegal conduct and prevents the court from sanctioning such actions. *Id.* But in this case, the person that orchestrated the Ponzi scheme has already been removed and is not a party to this case. Winsome as an entity was simply a vehicle used by Andres to effectuate the fraud. Andres, not Winsome, was the wrongdoer. *Cornelius*, 786 F.3d at 1316 ("[A] business entity abused by a Ponzi scheme qualifies as a defrauded creditor."). Thus, the recovered funds will not benefit the wrongdoer, but will be used to make whole the creditor-victims of Andres' misuse of Winsome. Given that the

Widmarks will only be liable for payments in excess of the amount they invested, applying *in pari delicto* would simply allow them to retain the benefits of Andres' wrongful conduct at the expense of the defrauded investors. Because that is clearly an inequitable outcome, the court concludes that *in pari delicto* does not bar the Receiver's claims.

**III. Unjust Enrichment**

While the Receiver is also seeking to avoid the transfers under a claim of unjust enrichment, recovery under such a theory "is available only when no enforceable written or oral contract exists." *Wood v. Utah Farm Bureau Ins. Co.*, 2001 UT App 35 ¶ 10, 19 P.3d 392 (internal quotations omitted); *Mann v. Am. Western Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978). Although the Widmarks have not submitted a contract into evidence, Exhibit D to the Receiver's Motion for Summary Judgment shows an email dated February 13, 2006 from Andres to the Widmarks attaching two agreements they were supposed to execute, together with the banking information of Winsome. (Dkt. No. 40-5). This is consistent with the Widmark's testimony that after meeting with Andres in Houston that month, they returned signed documents and investment funds to Winsome. Affidavit of Peter Widmark ¶¶ 5–6 (Dkt. No. 11); Affidavit of Laurie Widmark ¶¶ 5–6 (Dkt. No. 12). The Declaration of Jerry Comedaux also indicates that Winsome sent him an email with an attached Joint Venture Agreement and directions on where to wire his funds for investment. Decl. Jerry Comedaux p. 2, 7–13 (Dkt. 39-8). Even if there was no written agreement, the testimony that Andres made representations to the Widmarks about the Winsome investment program, together with the Widmark's subsequent tender of investment funds, is sufficient evidence of a contract. In light of that, the court concludes that the Receiver cannot recover under unjust enrichment.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 40) is GRANTED IN PART with regards to the claims for liability under the Uniform Fraudulent Transfer Act, with the Receiver entitled to judgment for the transfers in an amount reduced by the total sums the Widmarks' invested in Winsome; but DENIED on the claim for unjust enrichment. Defendants' Motion for Summary Judgment (Dkt. No. 39) is DENIED.

SO ORDERED this 26th day of August, 2015.


BY THE COURT:

_____
Clark Waddoups
United States District Court Judge