IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, the Court-Appointed Receiver of U.S. VENTURES LC, WINSOME INVESTMENT TRUST, and the assets of ROBERT J. ANDRES and ROBERT L. HOLLOWAY,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PETER O. WIDMARK and LAURIE WIDMARK, husband and wife,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER ON PREJUDGMENT INTEREST**<br><br>Case No. 2:11-cv-01097<br><br>Judge Clark Waddoups |

**INTRODUCTION**

This matter is before the court on plaintiff's Motion for Entry of Final Judgment and Award of Prejudgment Interest and Memorandum in Support (Dkt. No. 51). The court, having considered the parties' pleadings and arguments, now GRANTS plaintiff an award of prejudgment interest and orders plaintiff to submit revised briefing on the prejudgment interest calculation that conforms to this order, together with a proposed form of judgment, on or before **March 15, 2016**.

**BACKGROUND**

On August 26, 2015, the court entered a Memorandum Decision and Order granting plaintiff's motion for summary judgment on claims for liability under the Uniform Fraudulent Transfer Act. (Dkt. No. 50.) Factual background on this case is detailed in that order; however,

briefly plaintiff is the court-appointed Receiver seeking to recoup investor funds fraudulently transferred as a result of an alleged Ponzi scheme operated by U.S. Ventures LC, Winsome Investment Trust, Robert J. Andres, and Robert L. Holloway, who are the defendants in *U.S. Commodity Futures Trading Commission v. U.S. Ventures LC, et al.*, Case No. 2:11-cv-00099-BSJ, a case to which this case is ancillary.  Defendants in this case, Peter O. and Laurie Widmark, invested $100,000 with Winsome prior to 2007, and thereafter received distributions as follows: $140,000 on February 13, 2007; $140,000 on March 15, 2007; and $11,000 on May 12, 2008.  These distributions are $191,000 more than what they invested, which plaintiff as the Receiver is entitled to recover.  The issue before the court is whether the Receiver is entitled to prejudgment interest on this sum, and if so, in what amount and from what date(s).

## ANALYSIS

1. **Award of Prejudgment Interest**

Defendants argue that the court should not award prejudgment interest because while it can make an award if state law would allow it, Utah's Fraudulent Transfer Act makes no provision for prejudgment interest. While it is true that the remedy of prejudgment interest is not specifically identified in Utah's Fraudulent Transfer Act, U.C.A. § 25-6-8(1)(c)(iii) does authorize remedies to include "any other relief the circumstances may require."  In addition, the court "has broad powers and wide discretion to determine relief in an equity receivership."  *Wing v. Gillis*, 525 Fed. Appx. 795 (10th Cir. 2013) (unpublished).  Under principles of fairness and equity, prejudgment interest is proper in a fraudulent transfer case involving a Ponzi scheme, even when defendants such as the Widmarks have committed no wrongdoing. *See id.* This is so because the award of prejudgment interest "compensates for the loss of use of the money" and avoids a "windfall [to the defendant] in the form of an interest-free loan." *Id.* at 801 (quoting

*William A. Graham Co. v. Haughey*, 646 F.3d 138, 145 (3d Cir. 2011).  The court is persuaded by Judge Nuffer's reasoning in similar circumstances in *Miller v. Kelley*, No. 1:12-cv-00056 (Memorandum Decision and Order, Oct. 27, 2014), 2014 U.S. Dist. Lexis 153319:

> In effect, not awarding prejudgment interest rewards Defendant for [the Ponzi scheme operator]'s wrongdoing and rewards Defendant for extending litigation on the matter.  Defendant, though innocent of any wrongful involvement in the underlying scheme, should not obtain an unearned windfall because he happened to be one of the few who managed to benefit from the Ponzi scheme, gaining the benefit of the time value of the money at the expense of other, less-fortunate investors.

The same reasoning applies here.  The court awards prejudgment interest to plaintiff.

2. **Dates Upon Which Prejudgment Interest is Awarded**

Defendants argue that the starting point for calculating prejudgment interest should be the date the Receiver first made his demand, or the date the complaint was filed, whichever is earlier.  They reason by analogy from case law involving bankruptcy trustees, where awards of prejudgment interest from the date of preferential transfers have been found to be incorrect "because the transfer is not improper in any respect at the time it occurs." *In re: Phillips*, 379 B.R. 765 (Bkr. N.D. Ill 2007). This reasoning is incorrect in the context of a fraudulent transfer involving a Ponzi scheme.  Because every transfer made by a Ponzi scheme can be considered as having been made with actual fraudulent intent, it is appropriate for defendants to "pay prejudgment interest on payments received in excess of [their] investment from the date of those payments' receipt." *Miller*, 2014 U.S. Dist. Lexis 153319.  *See Wing v. Buchanan*, 533 Fed. Appx. 807 (10th Cir. 2013) (unpublished) ("One can infer an intent to defraud . . . from the mere fact that a debtor was running a Ponzi scheme.") (quoting *Merrill v. Abbott (in re Indep. Clearing House Co.),* 77 B.R. 843, 860 (D. Utah 1987).  Therefore, the court holds that defendants should pay prejudgment interest on $40,000 beginning February 13, 2007 (based on a distribution of

$140,000 less their initial $100,000 investment), $140,000 beginning March 5, 2007, and $11,000 beginning May 12, 2008.

3. **Amount of Prejudgment Interest**

Neither Utah statute nor federal law specifies the appropriate rate of prejudgment interest for a fraudulent transfer case. In similar cases, the 10th Circuit has upheld an award of 5% prejudgment interest, which is what the Receiver seeks in this case and what this court has awarded against other Winsome investors (who did not respond or object to the Receiver's proposal). Upon review of *Wing v. Gillis*, 525 Fed. Appx. at 802, which was upheld by the 10th Circuit, the court notes that a 5% prejudgment interest rate was chosen because it was mid-way between those parties' positions. In this case, where defendants are participating in the proceedings, an award based on this arbitrary number is not appropriate. Defendants argue that the appropriate rate is either the prime rate or the 52-week Treasury bill rate, because prejudgment interest "should reflect the return defendants could have obtained on the money in financial markets during that period." *Amoco Production Co. v. United States*, 663 F.Supp. 998, 1001 (D. Utah 1987).

Defendants have not provided the court with 52-week Treasury Bill rates any earlier than September 23, 2015. Furthermore, their rationale for this rate is based on *Amoco Production*, where the court found that the 52-week Treasury Bill rate was appropriate for defendant United States, who could expect to receive this rate on its investments. In this case, the rationale for applying the 52-week Treasury Bill rate is less persuasive. Instead, the court is persuaded by defendant's argument that the prime rate appropriately represents the market rate to which plaintiff's award should be tied.

Defendants provided the court with a table showing the prime rate as of the first day of every month from February 2007 through September 2015.  These rates range from a high of 8.25% in 2007 to a steady 3.25% from January 2009 through September 2015.  Defendants urge the court to adopt the average of the prime rate during this time period, which they claim would be 3.99%.  Because the court's rationale here is to award prejudgment interest reflective of what plaintiff could have received on investments during this time period, it declines to follow defendants' suggestion.  Instead, the court awards prejudgment interest on the amount due in any given month from February 2007 through March 2016 based on the prime rate in effect on the first day of that month.  The court recognizes that this will require calculations that have not yet been made.  Therefore, the court orders plaintiff to provide the court with a calculation of prejudgment interest in conformance with this order, along with a proposed form of judgment, on or before March 15, 2016.

## CONCLUSION

For the foregoing reasons, the court GRANTS plaintiff's motion for prejudgment interest and orders plaintiff to submit revised briefing on the prejudgment interest calculation that conforms with this order, together with a proposed form of judgment, on or before **March 15, 2016**.

SO ORDERED this 2nd day of March, 2016.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge